**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JUAN CARLOS VAZQUEZ, *individually and on behalf of others similarly situated*,

                              *Plaintiff*,

-against-

HAND HOSPITALITY LLC (D/B/A HAND HOSPITALITY), HER NAME IS HAN LLC (D/B/A HER NAME IS HAN), HAND 3535 LLC (D/B/A ON), MADANGSUI INC. (D/B/A MADANGSUI), KI HYUN LEE , JINYOUNG Y CHOI , and CHO DANG GOL LLC (D/B/A CHO DANG GOL),

                              *Defendants*
---------------------------------------------------------X

**20-cv-05328**
**DECLARATION OF MICHAEL FAILLACE ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT <u>JUDGMENT</u>**

      MICHAEL FAILLACE, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

      1.     I represent the Plaintiff Juan Carlos Vazquez ("Plaintiff"), in this lawsuit for unpaid minimum and overtime wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations. I submit this affirmation in support of Plaintiffs' application for a default judgment against defendants Hand Hospitality LLC (d/b/a Hand Hospitality), Her Name is Han LLC (d/b/a Her Name is Han), Hand 3535 LLC (d/b/a On), Madangsui Inc. (d/b/a Madangsui), Cho Dang Gol LLC (d/b/a Cho Dang Gol), ("Defendant Corporations"), Ki Hyun Lee (referred to herein as "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b).

Procedural History

2. Plaintiff commenced this action by filing the Complaint (and associated documents) on July 10, 2020. A true and correct copy of the Complaint is attached hereto as Exhibit A.

3. Plaintiff's filed an Amended Complaint on November 12, 2020. A true and correct copy of the Amended Complaint is attached hereto as Exhibit B.

4. This is an action for unpaid minimum and overtime wages, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See Exhibit B, generally, Amended Complaint, for description of the nature of the claims.

5. The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* Exhibit B.

6. Defendant Hand Hospitality LLC (d/b/a Hand Hospitality), was served with a copy of the complaint on July 17, 2020. Thereafter, Defendant Hand Hospitality LLC (d/b/a Hand Hospitality), was served with a copy of the amended complaint on November 19, 2020. True and correct copies of the proof of service for Defendant Monster Construction LLC (d/b/a Monster Construction) are attached hereto as Exhibit C, and Exhibit D, respectively.

7. Defendant Her Name is Han LLC (d/b/a Her Name is Han), was served with a copy of the complaint on July 17, 2020. Thereafter, Defendant Her Name is Han LLC (d/b/a Her Name is Han), was served with a copy of the amended complaint on November 19, 2020. True and correct

copies of the of the proof of service for Defendant Her Name is Han LLC (d/b/a Her Name is Han) are attached hereto as Exhibit E, and Exhibit F, respectively.

8.      Defendant Madangsui Inc. (d/b/a Madangsui), was served with a copy of the complaint on July 17, 2020. Thereafter, Defendant Madangsui Inc. (d/b/a Madangsui), was served with a copy of the amended complaint on November 19, 2020. True and correct copies of the proof of service for Defendant Madangsui Inc. (d/b/a Madangsui) are attached hereto as Exhibit G, and Exhibit H, respectively.

9.      Defendant Cho Dang Gol LLC (d/b/a Cho Dang Gol) was served with a copy of the complaint on July 17, 2020. Thereafter, Defendant Cho Dang Gol LLC (d/b/a Cho Dang Gol) was served with a copy of the amended complaint on November 19, 2020. True and correct copies of the proof service for Defendant Cho Dang Gol LLC (d/b/a Cho Dang Gol) are attached hereto as Exhibit I, and Exhibit J, respectively.

10.     Defendant Hand 3535 LLC (d/b/a On) was served with a copy of the amended complaint on November 19, 2020. True and correct copies of the proof of service for Defendant 3535 LLC (d/b/a On) is attached hereto as Exhibit K.

11.     Defendant Ki Hyun Lee was served with a copy of the complaint on July 16, 2020. Thereafter, Defendant Ki Hyun Lee was served a copy of the amended complaint on November 25, 2020. True and correct copies of the proof of service for Individual Defendant Ki Hyun Lee are attached hereto as Exhibit L, and Exhibit M, respectively.

12.     Defendants did not answer or otherwise respond to the Complaint.

13.     Defendant Ki Hyun Lee is neither an infant nor incompetent.

14.     Defendant Ki Hyun Lee is not in the active service of the United States military.

15. Plaintiff moved for entry of default on June 2, 2021. The Clerk of the Court then noted defaults against Hand Hospitality LLC (d/b/a Hand Hospitality), Her Name is Han LLC (d/b/a Her Name is Han), Hand 3535 LLC (d/b/a On), Madangsui Inc. (d/b/a Madangsui), Cho Dang Gol LLC (d/b/a Cho Dang Gol), and Ki Hyun Lee on June 2, 2021. True and correct copies of the Clerk's Certificates of Default is attached hereto as Exhibit N, Exhibit O, Exhibit P Exhibit Q, Exhibit R and Exhibit S.

16. The declaration of Juan Carlos Vazquez in support of this motion for default judgment is annexed as Exhibit T.

Statement of Facts Supporting Entry of Judgment

17. As alleged in the Amended Complaint and as stated in Plaintiffs' declaration, Defendants owned, operated, and controlled a chain of Korean restaurants, located at 17 E 31st St, New York, NY 10016 under the name "Her Name is Han", at 110 Madison Ave, New York, New York 10016 for Hand3535 LLC d/b/a "On", at 35 W 35th St, New York, NY 10001 under the name "Madangsui", at 55 W 35th St, New York, NY 10001 under the name "Cho Dang Gol", (Vazquez Dec. ¶ 4).

18. Defendants' principal office is located at 38 W 32nd St, Ste 1400, New York, New York 10001 under the name "Hand Hospitality".

19. Plaintiff is a former employee of Defendants. (Vazquez Dec. ¶ 3 and ¶ 6).

20. Defendants had a gross volume of sales that exceeded $500,000. (Amended Complaint ¶ 33)

21. Defendants regularly required Plaintiff to work more than 40 hours per week without paying him minimum and overtime wages. (Vazquez Dec. ¶ 9-13).

## JUAN CARLOS VAZQUEZ

22. Defendants employed Plaintiff Vazquez as a dishwasher, a food preparer, and a cook from approximately September 2015 until on or about June 28, 2020. (Vazquez Dec. ¶ 6-7).

23. From approximately September 2015 until on or about January 2019, Plaintiff Vazquez worked as a dishwasher and a cook at the Her Name is Han location from approximately 11:00 a.m. until on or about 11:00 p.m., Mondays, Wednesdays, and Thursdays, from approximately 10:00 a.m. until on or about 12:00 a.m., Fridays and Saturdays, and from approximately 10:00 a.m. until on or about 10:00 p.m., Sundays (typically 76 hours per week). (Vazquez Dec. ¶ 9).

24. From approximately February 2019 until on or about February 2020, Plaintiff Vazquez worked as a food preparer and a cook at the On location from approximately 1:00 p.m. until on or about 11:00 p.m., Mondays, Wednesdays, and Thursdays, from approximately 12:00 p.m. until on or about 11:00 p.m., Fridays and Saturdays, and from approximately 1:00 p.m. until on or about 11:00 p.m., Sundays (typically 62 hours per week). (Vazquez Dec. ¶ 10).

25. From approximately March 2020 until on or about April 2020, Plaintiff Vazquez worked as a dishwasher and a food preparer at the Madangsui location from approximately 11:00 a.m. until on or about 10:00 p.m., Fridays and Saturdays and from approximately 12:00 p.m. until on or about 10:00 p.m., Sundays, Wednesdays, and Thursdays (typically 52 hours per week). (Vazquez Dec. ¶ 11).

26. From approximately May 2020 until on or about June 6, 2020, I worked for three weeks as a dishwasher at the Cho Dang Gol location from approximately 10:00 a.m. until on or about 10:00 p.m., Tuesdays through Saturdays (typically 60 hours per week). In addition, I worked

5

for two weeks as a dishwasher and a food preparer at the Madangsui location from approximately 11:00 a.m. until on or about 10:00 p.m., Fridays and Saturdays and from approximately 12:00 p.m. until on or about 10:00 p.m., Wednesdays, Thursdays, and Sundays (typically 52 hours per week). (Vazquez Dec. ¶ 12).

27. From approximately June 7, 2020 until on or about June 28, 2020, Plaintiff Vazquez worked as a dishwasher and a food preparer at the Madangsui location from approximately 11:00 a.m. until on or about 10:00 p.m., Fridays and Saturdays and from approximately 12:00 p.m. until on or about 10:00 p.m., Wednesdays, Thursdays, and Sundays (typically 52 hours per week). (Vazquez Dec. ¶ 13).

28. Throughout his employment, Defendants paid Plaintiff Vazquez his wages in cash. ((Vazquez Dec. ¶ 14)

29. From approximately September 2015 until on or about February 2016, Defendants paid Plaintiff Vazquez a fixed salary of $600 per week for his work at the Her Name is Han location. (Vazquez Dec. ¶ 15)

30. From approximately March 2016 until on or about September 2016, Defendants paid Plaintiff Vazquez a fixed salary of $650 per week for his work at the Her Name is Han location. (Vazquez Dec. ¶ 16)

31. From approximately October 2016 until on or about March 2017, Defendants paid Plaintiff Vazquez a fixed salary of $700 per week for his work at the Her Name is Han location. (Vazquez Dec. ¶ 17)

32. From approximately April 2017 until on or about September 2017, Defendants paid Plaintiff Vazquez a fixed salary of $750 per week for his work at the Her Name is Han location. (Vazquez Dec. ¶ 18)

33. From approximately October 2017 until on or about March 2018, Defendants paid Plaintiff Vazquez a fixed salary of $800 per week for his work at the Her Name is Han location. (Vazquez Dec. ¶ 19)

34. From approximately April 2018 until on or about March 2019, Defendants paid Plaintiff Vazquez a fixed salary of $750 per week for his work at the Han location. (Vazquez Dec. ¶ 20)

35. From approximately April 2019 until on or about August 2019, Defendants paid Plaintiff Vazquez a fixed salary of $850 per week for his work at the On location. (Vazquez Dec. ¶ 21)

36. From approximately September 2019 until on or about January 2020, Defendants paid Plaintiff Vazquez a fixed salary of $900 per week for his work at the On location. (Vazquez Dec. ¶ 22)

37. From approximately February 2020 until on or about March 15, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $950 per week for his work at the On location. (Vazquez Dec. ¶ 23)

38. From approximately March 16, 2020 until on or about March 22, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $960 per week for his work at the On location. (Vazquez Dec. ¶ 24)

39. From approximately March 23, 2020 until on or about March 29, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $400 per week for his work at the On location. (Vazquez Dec. ¶ 25)

40. From approximately March 30, 2020 until on or about April 26, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $300 per week for his work at the Madangsui location. (Vazquez Dec. ¶ 26)

41. From approximately April 27, 2020 until on or about May 10, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $300 per week for his work at the Cho Dang Gol location. (Vazquez Dec. ¶ 27)

42. From approximately May 11, 2020 until on or about May 24, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $400 per week for his work at the Cho Dang Gol location. (Vazquez Dec. ¶ 28)

43. From approximately May 25, 2020 until on or about May 31, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $600 per week for his work at the Cho Dang Gol location. (Vazquez Dec. ¶ 29)

44. From approximately June 1, 2020 until on or about June 14, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $600 per week for his work at the Madangsui location. (Vazquez Dec. ¶ 30)

45. From approximately June 15, 2020 until on or about June 28, 2020, Defendants paid Plaintiff Vazquez a fixed salary of $500 per week for his work at the Madangsui location. (Vazquez Dec. ¶ 31)

46.     Plaintiff Vazquez was not provided with notice in English and in Spanish, his primary language, of his rate of pay. (Vazquez Dec. ¶ 34).

47.     Defendants did not provided Plaintiff Vazquez with a wage statement detailing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; and net wages. (Vazquez Dec. ¶ 35).

<u>Plaintiff is Entitled to Judgment by Default</u>

48.     It is well settled that defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

49.     Defendants failed to file an answer or otherwise respond to the Complaint, despite the time to do so having expired. Thus, Plaintiffs' allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiffs' right to default judgment.

50.     Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to

9

hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

51.     Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff puts forward, damages, including back pay, liquidated damages, prejudgment interest, should be awarded in the amount of $542,801.10 and attorneys' fees and costs should be awarded in the amount of $7,426.10.

Plaintiff Damages Calculation

52.     Annexed as Exhibit U is a chart setting out the damages Plaintiff is entitled to recover.

53.     In the damages chart, the Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavit, lists the number of hours worked per week in each period ("Hours Per Week in Period). The "regular rate of pay" for each period is determined by dividing the amount actually paid each week to Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavit. The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period.

10

54. Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows:

((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) +

((greater time and a half rate) * (Hours Per Week over forty, if any))

The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT," column, which equal 100% of the "Unpaid Wages and OT" for each pay period.

55. Interest, where applicable, is calculated from the midpoint of each period to today's date, at the simple rate of 9% per annum.

56. The legal basis for the damages calculations within the chart are set out below.

<u>Back Pay</u>

57. At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). The New York Minimum wage rate was $10.50 per hour as of December 31, 2016; $12.00 per hour as of December 31, 2017 and it further increased to $13.50 per hour as of December 31, 2018. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

58. The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." Zeng Liu v. Jen Chu Fashion Corp, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

59. Here, Plaintiff was not paid overtime at the rate of one-and-a-half times his regular rates. ((Vazquez Dec. *Gen*.).

12

60. Accordingly, to determine the Plaintiffs' unpaid overtime wages, Plaintiff's regular rate is multiplied by 1.5 to determine the overtime rate the Plaintiff should have received ("Lawful Weekly Pay").

61. The amount that Plaintiff received is subtracted from the Lawful Weekly Pay in order to determine Plaintiff's Underpayment per week.

62. In total, Plaintiff Vazquez is owed $216,399.50 in unpaid overtime wages. As of June 11, 2021, Plaintiff Vazquez is entitled to $72,333.09 in prejudgment interest on wages, overtime, and spread of hours interest. See Exhibit U.

63. Additionally, Plaintiff Vazquez was not paid "spread-of-hours" pay per week for working on such number of days for a spread (from the beginning of the workday until the end of the workday) greater than ten hours. For unpaid SOH pay during this period, Plaintiff Vazquez is entitled to $13,834.50 (minimum wage rate times day worked wherein the spread exceeded 10 hours times weeks worked) in damages and an additional $13,834.50 in liquidated damages.

Wage Notice and Statement Violations

64. Defendant at all relevant times, Defendants did not provide Plaintiff with a hiring notice or a wage statement, as required by NYLL §§ 195(1), 195(3). Therefore, in accordance with NYLL § 198, Plaintiff is entitled to statutory damages of $5,000 for violations of NYLL § 195(1) and of $5,000 for violations of NYLL § 195(3), for a total of $10,000 for the Plaintiff.

Liquidated Damages

65. Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid

13

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

66. Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

67. Given the uncontroverted evidence of Defendant's lack of good faith Plaintiffs are entitled by statute to liquidated damages under the New York Labor Law, computed at 100% for any subsequent unpaid minimum and overtime wages.

68. Plaintiff Vazquez is entitled to liquidated damages of $216,399.50 on his unpaid overtime wages. See Exhibit U.

69. The Plaintiff also seeks an award of prejudgment interest on the New York law claims for unpaid overtime wages. Under New York law, the court may award prejudgment interest pursuant to N.Y. C.P.L.R. § 5001 on an award of back pay. *See Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485-86 (S.D.N.Y. 2001); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (N.Y. County 1997). This is because under New York) law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the Plaintiff's money. *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v.*

14

*Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *Reilly v. Natwest Mkts. Group,* 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000). In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is so because under New York law liquidated damages are considered a penalty, serving a different purpose as a sanction for willfully failing to pay wages. *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981).

70. Under N.Y. C.P.L.R. § 5004, prejudgment interest runs at the rate of nine percent (9 %) per annum simple interest. *See Perero v. Food Jungle, Inc.*, No. 05 Civ 4347, 2006 WL 2708055, at *8 (E.D.N.Y. Aug. 7, 2006). As to the date from which interest is to be calculated, the statute states that "[w]here . . . damages were incurred at various times, interest [may] be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). When claims that are reduced to judgment have arisen on different dates, the Court may compute prejudgment interest from an appropriate single median date. See *Perero*, 2006 WL 2708055, at *8; *Koylum, Inc. v. Peksen Realty Corp.*, 357 F. Supp. 2d 593, 597 (E.D.N.Y. ), *aff'd in pertinent part and vacated in part*, 160 Fed.Appx. 91 (2d Cir. 2005). Thus prejudgment interest on Plaintiffs' back pay awards should be computed from the median of each relevant period to the date of judgment.

## Attorneys' Fees and Costs

71. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid

by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

72. Plaintiffs incurred attorneys' fees in pursuing this action, and seek an award of reasonable attorney's fees.

73. A breakdown of attorneys' fees in the form of this firm's standard billing sheet is attached hereto as Exhibit V.

74. The timekeepers on this matter are indicated by the following initials and have the following rates:

    a. "MF" — Michael Faillace, $450 per hour
    b. "GN" – Gennadiy Naydenskiy, $350 per hour
    c. "PL" – paralegal, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

    i. Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law

      publications and presentations. His regular billing rate of $450 per hour is reflected in Exhibit L.

ii. Gennadiy Naydenskiy is an associate at Michael Faillace & Associates, P.C. He is a 2013 graduate of the State University of New York at Buffalo Law School, admitted to the New Jersey Bar and the United States District Court, District of New Jersey, in December 2013, the New York Bar in February 2014, the United States District Court, Southern District of New York in June 2014, and the United States District Court, Eastern District of New York in July 2014. Prior to joining Michael Faillace and Associates, P.C. in August 2018, Gennadiy Naydenskiy was a solo practitioner from October 2014, focusing primarily on FLSA and NYLL wage and hour cases. Prior to founding his solo practice, Gennadiy Naydenskiy was an associate for Harrison, Harrison, and Associates, a boutique law firm that focus most of their practice on FLSA wage and hour individual, multi-plaintiff, collective and class actions. Additionally, prior to being an associate, Gennadiy Naydenskiy was a law clerk for Harrison, Harrison, and Associates from May 2012. His regular billing rate of $350 per hour is reflected in Exhibit L.

iii. The initials "PL" in the billing sheet refer to work done by paralegals at the firm.

Conclusion

75.     Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendants in favor of Plaintiff in the total amount of $542,801.10 for minimum and overtime damages, liquidated damages, spread of hours, and prejudgment interest. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

76.     Additionally, Plaintiff is entitled to $7,426.10 in attorneys' fees.

77.     As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiffs that allows damages to be calculated with reasonable certainty.

78.     Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's declaration accompanying these motion papers.

79.     Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

80.     Plaintiff also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

81.     The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

82. A proposed form of judgment is attached as Exhibit W.

83. For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiff's motion for a default judgment should be granted.

84. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: New York, New York
       June 15, 2020

                                        /s/ Michael Faillace
                                        Michael Faillace