UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN CARLOS VAZQUEZ,
*individually and on behalf of all others
similarly situated*,

                              Plaintiff,

                  – *against* –

HAND HOSPITALITY LLC, *doing
business as* HAND HOSPITALITY,
HER NAME IS HAN LLC, *doing
business as* HER NAME IS HAN,
MADANGSUI INC., *doing business as*
MADANGSUI, CHO DANG GOL LLC,
*doing business as* CHO DANG GOL,
HAND 3535 LLC, *doing business as* ON,
and KI HYUN LEE,

                              Defendants.

**<u>OPINION & ORDER</u>**

20-cv-5328 (ER)

<u>Ramos, D.J.:</u>

        The Court entered default judgment in favor of plaintiff Juan Carlos Vazquez on

January 20, 2022.  Doc. 94.  That judgment awarded Vazquez $542,801.10 in

compensatory damages, liquidated damages, pre-judgment interest, and post-judgement

interest pursuant to 28 U.S.C. § 1961(a).  *Id.* at 2.  Additionally, it awarded attorney's

fees and costs totaling $7,426.10.  *Id.*  Before the Court is a motion to reopen the case and

vacate default judgment pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil

Procedure filed by defendants Hand Hospitality LLC, Her Name is Han LLC, Madangsui

Inc., Cho Dang Gol LLC, Hand 3535 LLC, and Ki Hyun Lee ("Defaulting Defendants"

or "Defendants").  Doc. 106.  For the reasons set forth below, the motion is DENIED.

**I.      BACKGROUND**

        **A.  Factual Background**

        Vazquez brought this action on July 10, 2020, for unpaid minimum and overtime

wages pursuant to the Fair Labor Standards Act ("FLSA"), along with related state law

claims against corporate defendants Hand Hospitality LLC, Her Name is Han LLC, Madangsui Inc., Cho Dang Gol LLC, and On (the "Corporate Defendants"), and individual defendants Ki Hyun Lee and Jinyoung Y. Choi (the "Individual Defendants").[1] Doc. 1 ¶¶ 1–10.  Vazquez alleged in his amended complaint that the Individual Defendants served as owners, managers, principals, or agents of the Corporate Defendants.  Doc. 34 ¶ 3.

Vazquez's action arose out of his work as a dishwasher, food preparer, and cook at four of the Corporate Defendants' restaurants:  Her Name is Han, On, Madangsui, and Cho Dang Gol.  *Id.* ¶ 4.  He alleged that he regularly worked in excess of 40 hours per week without appropriate minimum wage, overtime, and spread of hours compensation for the hours that he worked.  *Id.* ¶ 5.  He further claimed that Defendants failed to maintain accurate recordkeeping of hours worked and also failed to provide him and other employees with accurate wage statements.  *Id.* ¶ 6, 79.

### B.  Procedural History

Vazquez brought this action on July 10, 2020.  Doc. 1.  The parties agree that the Corporate Defendants received notice of the complaint on July 16 and July 17, 2020, when they were served by delivery to an authorized agent at the Office of the Secretary of State of New York.  Doc. 107 at 2; Doc. 109 at 2–3; *see also* Docs. 26–29.  The Individual Defendants were personally served via delivery to Alex Park, a manager of the Defendant restaurants, at Hand Hospitality on July 16, 2020.  Docs. 30–31; *see also* Doc. 108 ¶ 1.

Vazquez amended his complaint on November 12, 2020.  Doc. 34.  The Corporate Defendants were once again served by delivery to an authorized agent at the Office of the Secretary of State of New York.  Docs. 49–53.  Defendant Lee was served on November

---

[1] In his amended complaint, Vazquez added Hand 3535 LLC as a Corporate Defendant and clarified that it does business as "On."  Doc. 34 ¶ 1, 20; *see* Doc. 1 ¶ 1, 20.

25, 2020, by physical delivery of a copy of the amended complaint to Yun Choi, an accountant, at his place of business, and by regular mail at the physical location of Hand Hospitality.[2]  Doc. 54.

Vazquez moved to voluntarily dismiss individual defendant Jinyoung Y. Choi without prejudice on April 23, 2021.  Doc. 56.  He also requested 45 days to file a motion for default judgment as to the remaining defendants on that date.  *Id.*

After several extensions of time, Vazquez filed a proposed order to show cause why default judgment should not be entered against the remaining Defendants, along with supporting documentation, on June 15, 2021.[3]  Docs. 75–77.  The Court issued the Order to Show Cause on December 21, 2021.  Doc. 86.  The Court ordered the parties to appear on January 20, 2022, by telephone, Doc. 86 at 1, and further warned the defendants that failure to respond could be grounds for the entry of default judgment, *id.* at 2.  The Corporate Defendants were once again served by delivery to an authorized agent at the Office of the Secretary of State, Docs. 87–91, and Lee was served by priority mail and through personal service, Docs. 92–93.

None of the defendants responded or appeared at the January 20, 2022, hearing.  *See* Min. Entry Jan. 20, 2022.  Accordingly, the Court issued the default judgment order that Defendants now seek to vacate.  *See* Doc. 94.

Defaulting Defendants initially filed a motion to vacate default judgment on July 26, 2022.[4]  Doc. 95; *see also* Docs. 101–108.  The Court held a pre-motion conference on August 11, 2022, and Defendants resubmitted their motion several weeks later, on

---

[2] Individual defendant Jinyoung Y. Choi was never served with the amended complaint.  *See* Doc. 56.

[3] Vazquez attached to his proposed order Clerk's Certificate of Default as to each of the remaining Defendants:  Ki Hyun Lee and the five Corporate Defendants.  *See* Doc. 76; *see also* Docs. 67–72.

[4] Defendants did not follow the Court's individual rules with respect to the initial filing of their motion.  The Court thus scheduled a pre-motion conference and directed the defendants to submit a letter of no more than three pages in accordance with the Court's individual rules.  Doc. 98.

September 1, 2022.[5]  *See* Doc. 101.  Vazquez filed a response in opposition on September 29, 2022.  *See* Docs. 109–111.  Defendants then filed their reply on September 29, 2022.  Doc. 112.

Along with their moving papers, Defaulting Defendants filed the affidavit of Alex Park, the manager of the Defendant restaurants and the person who received service of Vazquez's complaint.  Doc. 108; *see also* Docs. 30–31.  Park denied the substantive allegations of Vazquez's complaint and provided screenshots of various text messages that were exchanged between Vazquez and Lee and Vazquez and Parker in 2020 and 2021.[6]  Doc. 108 ¶¶ 3–16.  Importantly, Park's affidavit alleges that Vazquez agreed that he "would halt the litigation and settle the case." *Id.* ¶ 6 (citing Doc. 108-3 at 1–3).[7]  Park further claims that as 2021 began, he "and the other defendants believed that the

---

[5] The motion was refiled various times due to various deficient docket entries.  *See* Docs. 102–105.  It was properly filed on September 28, 2022.  Doc. 106.

[6] While Parker stated that "Defendants will be able to produce ample evidence" showing that Vazquez's wage-and-hour allegations were untrue, he did not attach or describe what that evidence would be.  Doc. 108 ¶ 3.

[7] The text messages that Park references indicate that he scheduled a time to speak with Vazquez and later thanked him for meeting.  Doc. 108-3 at 2.  Specifically, they indicate that on July 15, 2020, Vazquez and Park agreed to meet at 2:00 in the afternoon.  *Id.*  Later, at 3:16, p.m., Park sent Vazquez two texts thanking Vazquez for meeting and further stating "Anytime talk to me and communicate with me.  I will be there." *Id.*  Thereafter, the text thread reflects that Park attempted to reach Vazquez on July 17 and 23, 2020, on each occasion asking Vazquez to call him.  *Id.*  Vazquez then asked Park what had happened on July 24, and Park replied by stating "How are you :)" several minutes later.  *Id.* at 3.  After Vazquez replied, "Good and you," Park stated the following:  "Good.  Did you talk with lawyer that stop the law suit? [sic] Hope work together soon.  Let's work together."  *Id.*

On July 28, Park asked Vazquez to call him again.  *Id.*  Vazquez once again asked what had happened.  *Id.*  Park then said the following:  "Oh Carlos.  I want to talk with you and see you.  Can you come to the city Wednesday or Thursday?  Which one is better to you?"  *Id.*  Park continued to text Vazquez on various occasions in late July and early August, but Vazquez stopped responding.

The exhibits to Park's affidavit show that similar conversations occurred throughout the latter half of 2020.  *See, e.g.*, Doc. 108-4; Doc. 108-5; Doc. 108-6.  While Park asserted that he was waiting for Vazquez's lawyer to call to confirm that the case was "done," the record does not indicate that Vazquez actually said that.  Doc. 108-6 at 2.  Park continued texting Vazquez through the end of 2020.  *See* Doc. 108-7; Doc. 108-8.  While it is true that Vazquez at one point stated "I will stop the Law suites. [sic] Sorry" in early December 2020, that statement came after months of repetitive text messages and calls from the Defendants.  Doc. 112-1 at 2; *see also id.*  Importantly, Vazquez continued litigating his case.  And on December 30, 2020, Vazquez asked Parker to stop texting and calling him, and further stated that the Defendants should speak with his attorney if they needed anything.  Doc. 108-8 at 2.

matter would be settled without litigation." *Id.* ¶ 11 (citing Doc. 108-9 at 1–3; Doc. 108-10 at 1–2).

## II.    LEGAL STANDARD

Fed. R. Civ. P. 55(c) provides that a court may set aside an entry of default for good cause, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).  Defendants move to set aside the default judgment on the grounds that the judgment occurred as a result of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3).

Motions under Rule 60(b) appeal to the sound discretion of the district court. *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd sub nom.*, *Gollust v. Mendell*, 501 U.S. 115 (1991).  While there is a preference in the Second Circuit for resolving disputes on the merits, *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), especially when substantial rights or substantial sums of money are demanded, *id.* at 97, the orderly and efficient administration of justice may nevertheless require maintaining the default judgment, *id.* at 96.

In determining whether a default judgment should be set aside pursuant to Rule 60(b), the Court considers: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004); *see also State Univ. of New York v. Triple O, LLC*, 2022 WL 14177198, at *2 (2d Cir. Oct. 25, 2022) (summary order).  These factors are applied "more rigorously in the case of a default judgment" rather than in a challenge to the entry of a default, "because the concepts of finality and litigation repose are more deeply implicated in the [default judgment]

action." *Enron Oil Corp.*, 10 F.3d at 96; *see also 1199SEIU United Healthcare Workers East v. Alaris Health At Hamilton Park & Confidence Management Systems*, No. 22 Civ. 531 (LJL), 2022 WL 17251772, at *2 (S.D.N.Y. Nov. 28, 2022).

## III.    DISCUSSION

Vazquez argues that Defendants' default was willful, Defendants lack a meritorious defense, and vacating the default would result in prejudice to him.  Doc. 109 at 5.  On the other hand, Defaulting Defendants contend that Vazquez "deceived [them], through Mr. Park and Mr. Lee," insofar as he allegedly stated that "he was willing to resolve the lawsuit" through settlement.  Doc. 107 at 8.  They specifically contend that "[h]e did so by setting up appointments with them and not appearing for them, and by staying in contact through the end of 2021."  *Id.*  They also state in a conclusory fashion that Vazquez's wage-and-hour claims are based on untrue assertions of fact, *id.* at 6–7, and Vazquez will not suffer prejudice if the default is vacated because the "only disadvantage" he could possibly suffer is delay, *id.* at 7.

### *1.  Willfulness of the Default*

The parties dispute the degree of willfulness of Defendants' default.  *Compare* Doc. 109 at 5–8 *with* Doc. 107 at 4–6.  Vazquez emphasizes that "Defendants failed to answer the complaint and failed to respond [to the] motion for default judgment despite having knowledge of the proceedings.  In fact, the Defendants acknowledge service of the Complaint and knowledge of the lawsuit."  Doc. 109 at 5.  Defendants claim that their "actions in this case constitute, at worst, negligence and carelessness, not egregious or deliberate conduct."  Doc. 107 at 6.  They specifically argue that they believed "they had an agreement to discontinue and settle the case," and thus their "failure to file an Answer" should be excused because it "was based on that genuine belief."  *Id.*

In the context of default judgment, willfulness amounts to conduct that is "more than merely negligent or careless."  *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

In other words, willfulness is "egregious or deliberate conduct," such as where a defaulting defendant "apparently made a strategic decision to default." *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996).  Importantly, "[d]eliberately evasive conduct, even if not in 'bad faith,' amounts to 'more than mere negligence.'" *United States v. Manhattan Central Capital Corp.*, No. 94 Civ. 5573 (WK), 2001 WL 902573, at *5 (S.D.N.Y. Aug. 9, 2001) (quoting *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 634–35 (2d Cir. 1998)).

In this case, the Court agrees that the default was "more than merely negligent or careless," and was indeed willful. *McNulty*, 137 F.3d at 738.  Defaulting Defendants acknowledge that they were properly served and had notice of the instant litigation.  Doc. 107 at 1–2; *see also supra* pp. 1–4.  However, they chose not to participate in the case because they allegedly "believed that they had an agreement to discontinue and settle the case." Doc. 107 at 6.

Defendants' contention is belied by the affidavit and exhibits that they attach to their motion.  First, while Park, the manager of the Defendant restaurants, states that on July 15, 2020, "Vazquez told either me or Lee that he was going to tell his lawyer to dismiss the case, and that we would settle," the appended text messages show otherwise. Doc. 108 ¶ 6.  Indeed, when Park asked Vazquez whether he had spoken with his lawyer to "stop the law suit [sic]," the texts show that Vazquez never replied.  *See, e.g.*, Doc. 108-3 at 3.  The effect of that non-response is clear:  in fact, Park notes as much in his affidavit.  He specifically states that despite his conversation with Vazquez and the text message exchange, "Defendants were served with the Complaint on July 17, 2020, which *led me to contact Vazquez again on July 17 and July 23*." Doc. 108 ¶ 6 (emphasis added); *see also* Doc. 109 at 7 ("Plaintiff's decision not to answer Defendants' text messages does not illustrate cooperative or productive settlement discussions.  Instead, the texts further illustrate Defendants' illusory belief of a settlement and demonstrate Plaintiff's intentions to resolve the matter through litigation.").

7

Instead of appearing in the case and answering or responding to the complaint, the record shows that Defendants attempted to avoid litigation by personally contacting Vazquez and trying to meet with him to receive confirmation that he was going to dismiss the case.  Doc. 108 ¶ 7–10.  And yet Defendants attempt to characterize their behavior as a response to deceit on the part of Vazquez.  Doc. 107 at 6 ("Instead, it was Plaintiff who led Mr. Park and CEO Mr. Lee to believe that he would negotiate a settlement without involving the legal system by making appointments to meet with Mr. Park and Mr. Lee and then abruptly cancelling them or simply not appearing without notice."); *but see* Doc. 109 at 6 (noting that "Plaintiff believed that Defendants were bribing and intimidating him from exercising his rights in Court").

To be clear, Defendants—corporate entities and individuals who manage those corporate entities—fault Vazquez—a former dishwasher who brought various wage-and-hour claims against them—for failing to meet with them to discuss the dismissal of the action outside the presence of his attorney.[8]  *See id.* ¶¶ 6–10.  At the same time, Defendants acknowledge that they continued to receive notice of the ongoing litigation before this Court.  *Compare* Doc. 107 at 2 (acknowledging that "[a]n Amended Complaint was filed by Plaintiff on November 12, 2020, and Defendants were likewise served via electronic summons and the Secretary of State of the State of New York") *with* Doc. 108 ¶ 9 ("At the end of November, I asked Vazquez for an urgent meeting, which was scheduled for November 26, 2020, Thanksgiving Day.").  Defendants also acknowledge that Vazquez failed to agree to their demands for meetings, answer their

---

[8] It is well settled in the FLSA context that there is a strong public interest in assuring that employees' wages are fair, and settlements are subject to public scrutiny.  *See Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 179 (S.D.N.Y. 2015); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (noting that the FLSA was designed to "remedy the evil of overwork by ensuring workers were adequately compensated for long hours" and that the statute maintains "remedial and humanitarian goals") (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008)); *see also A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ("The Fair Labor Standards Act was designed to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.") (citation omitted).

text messages, or answer their calls.  Doc. 108 ¶¶ 7–11.  And despite the fact that on December 30, 2020, Vazquez clearly told Defendants to stop reaching out to him and to contact his lawyer with any questions, Doc. 108-8 at 2, Defendants contend that at that exact same time, "as the new year began, me and the other defendants believed that the matter would be settled without litigation," Doc. 108 ¶ 11.  That is the basis upon which Defendants ask the Court to conclude that the default was not willful.  *See* Doc. 107 at 6; *see generally* Doc. 108.

Defendants' arguments are simply untenable.  None of their attachments show that Vazquez agreed to settle this case.  *See* Docs. 108-1–108-11.  In fact, they clearly show the contrary.  Over the course of more than a year, Vazquez ignored Defendants' attempts to try to meet them without his attorney, asked Defendants to reach out to his attorney rather than contact him directly, and continued to litigate his case.  *See generally* Doc. 108; Docs. 108-1–108-12.  Defendants characterize Vazquez's actions in a self-serving manner and now attach a purported draft settlement agreement whose probative value is negligible in light of the record exhibits that clearly illustrate the deliberate nature of Defendants' default.  *See* Doc. 108 ¶ 14; *see also* Doc. 108-12; Doc. 109 at 7 (noting that "Plaintiff was never presented with a settlement agreement by the Defendants").  Indeed, those exhibits make it clear that Defaulting Defendants were well aware about the case; were properly served with the complaint, the amended complaint, and the Court's Order to Show Cause; and nevertheless decided to evade litigation by attempting to persuade Vazquez to dismiss his action through uninvited texts, calls, and requests for meetings.  They did so—and continued to do so—even *after* Vazquez had made it clear that he intended to pursue his claims and asked them to stop contacting him.  *See* Doc. 108-8 at 2.

The cases that Defendants rely on are inapposite and unavailing.  For example, in *Gonzalez v. City of New York*, 104 F. Supp. 2d 193 (S.D.N.Y. 2000), the parties engaged in counseled settlement conferences before a United States Magistrate Judge prior to the

entry of default judgment.  104 F. Supp. 2d at 195.  Accordingly, because the Court found that "defendants' counsel held the reasonable belief that the action would be settled," their failure to answer or respond amounted to "negligence [that was] easily understood" given the circumstances.  *Id.* at 196.  Here, on the other hand, there is neither evidence that the parties engaged in formal settlement discussions nor support for Defaulting Defendants' belief that that the case would settle at all.  At best, the record shows that Defendants strongly hoped that the case would settle, and that they attempted to secure that result by reaching out to Vazquez via text messages and calls, despite his wishes, as well as the progress of the ongoing litigation.  *See* Doc. 108 ¶¶ 3–16; *see also* Doc. 108-2; Doc. 108-3 at 3 (Park asking Vazquez whether he spoke with his lawyer to "stop the law suit [sic]," with no response from Vazquez); Doc. 108-6 at 4 (Park asking Vazquez whether he called his lawyer, with no response from Vazquez); Doc. 108-7 at 4 (Park asking Vazquez to come see him to discuss settlement, with no response from Vazquez); Doc. 108-8 at 2 (Vazquez asking Park to stop contacting him and to reach out to Vazquez's lawyer with any questions).  That hope does not mitigate Defendants' knowing failure to participate in the ongoing litigation.

Defendants' references to *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 246 F. Supp. 2d 231, 250 (S.D.N.Y. Nov. 5, 2002) are similarly at odds with the record in this case.  *See* Doc. 107 at 5.  In *State Street*, the district court adopted a Magistrate Judge's Report and Recommendation ("R & R") finding that defendants had not willfully defaulted.[9]  246 F. Supp. 2d at 235.  Critically, in the R & R, the Magistrate Judge found that the "parties were proceeding cooperatively during [the] period" leading up to the default.  *Id.* at 249.  Indeed, the record reflected that they had reached an agreement in principle and there was "no indication that the Defendants [] opted to sit on

---

[9] On appeal, the Second Circuit declined to address whether the underlying default was willful given that Plaintiff State Street did not challenge the district court's conclusions regarding the absence of a willful default.  *State Street Bank & Trust Co.*, 374 F.3d 158, 167 (2d. Cir. 2004).

their haunches," where it was clear that "Defendants had to take some steps to defend [the] suit." *Id.* at 250–51. In this case, for the reasons already stated herein, the record does not reflect that the parties engaged in any real settlement discussions. Rather, it shows that Defaulting Defendants elected to avoid defending their case despite their knowledge of the case and its progress.

Nor can Defendants properly compare this case to *Ningbo Mizhihe I&E Co., Ltd. v. Does 1-200*, No. 19 Civ. 6655 (AKH), 2019 WL 6841995 (S.D.N.Y. Dec. 16, 2019), wherein a default was not deemed willful. In that case, the parties had not only come to a settlement in principle, but the parties exchanged "several drafts" of the agreement. *Id.*, at *2. Additionally, the plaintiffs in that case "sought an entry of default with no notice whatsoever to Defendants." *Id.* (quotation marks and internal citation omitted). This record simply does not align with the facts in that case. *See, e.g.*, Doc. 109 at 7 (noting that "Plaintiff was never presented with a settlement agreement by the Defendants"). Defendants have thus failed to credibly show that there was an understanding between the parties that Vazquez would not move for entry of default.

For all these reasons, the Court finds that Defendants' default was willful.

### 2. *Merits of the Defense*

The parties also disagree about whether Defendants set out a meritorious defense in their motion. *Compare* Doc. 107 at 6–7 *with* Doc. 109 at 8–9.

To make a sufficient showing of a meritorious defense, a defendant need not prove the defense conclusively. *McNulty*, 137 F.3d at 738. A defendant must, however, present facts that if proven at trial, would constitute a complete defense. *Enron Oil Corp.*, 10 F.3d at 98; *see also Green*, 420 F.3d at 109 (citing *McNulty*, 137 F.3d at 740). Defaulting defendants must "present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).

While Defendants state that they "*have* a meritorious defense to Plaintiff's claims, namely that they are not true," they do not provide any evidence in support of that contention.  Doc. 107 at 6 (emphasis added).  Rather, they briefly note the following in a conclusory fashion:

> Here, the affidavit of Mr. Park, attached to the present motion, provides support for the fact that Plaintiff's case is simply not true since he was in fact provided a notice of his wages, a wage statements, and paid his due wages.  Certainly, if this were proven at trial, which Defendants can and will do, it would be considered a complete defense."

*Id.* at 7.  The affidavit similarly states, without support, that Vazquez was paid his wages and provided with proper statements.  Doc. 108 ¶ 3.

Because these statements amount to mere "conclusory denials," the Court concludes that Defendants have failed to present the existence of a meritorious defense. *Pecarsky*, 249 F.3d at 173.  Defendants seem to recognize as much in Park's affidavit, wherein he notes that "[s]hould this motion be granted and the case allowed to go on, Defendants *will be able to* produce ample evidence of these facts."  Doc. 108 ¶ 3. However, while it was not necessary to show that evidence would "carry the day," the caselaw makes clear that Defendants were tasked with submitting "some evidence beyond conclusory denials to support [their] defense" with their motion to vacate the default judgment.  *Enron Oil Corp.*, 10 F.3d at 98.

Accordingly, this factor also weighs in favor of denying the motion.  *Green*, 420 F.3d at 108.

### 3. *Prejudice to Vazquez*

Finally, the parties dispute the degree to which Vazquez would be prejudiced in the event that the Court enters vacatur.  *Compare* Doc. 107 at 7–8 *with* Doc. 109 at 9–10.

"[D]elay alone is not a sufficient basis for establishing prejudice."  *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Enron Oil Corp.*, 10 F.3d at 98. "Something more is needed."  *Green*, 420 F.3d at 110.  A plaintiff may demonstrate

prejudice by showing "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 216 (internal quotation marks and citation omitted). Prejudice may also be present if vacatur would "thwart plaintiff's recovery or remedy." *Green*, 420 F.3d at 110 (internal quotation marks and citation omitted). To meet this standard, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12 Civ. 52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).

Here, Vazquez argues that "vacatur of the default judgment would plainly prejudice the Plaintiff and thwart recovery because Plaintiff's Counsel has already started enforcing the judgment. If the default judgment is vacated, Plaintiff will be forced to start from square one and may be left without any recovery." Doc. 109 at 10. Defendants contend that Vazquez "will suffer no difficulties in discovery and, given that his employment began in 2015, the delay will not result in a loss of memory of the applicable facts." Doc. 107 at 7.

The facts in this case make clear that Defendants knowingly avoided defending against Vazquez's claims for approximately a year and a half, and later waited more than six months after the Court entered default judgment to file the instant motion. *See* Docs. 94, 95. Accordingly, due to this delay, Vazquez is now more than two years removed from his employment at the Defendant restaurants—a fact which may affect his ability to gather evidence to prosecute his case. *See Davis*, 713 F.2d at 216. Additionally, Vazquez contends that he would incur additional, unnecessary, costs in the event that the Court were to vacate the default—costs exceeding those associated with litigating the instant motion. *See Weingeist v. Tropix Media & Entertainment*, No. 20 Civ. 275 (ER), 2022 WL 970589, at *11 (S.D.N.Y. Mar. 30, 2022). He specifically states that he would be forced to engage in duplicative efforts to enforce the judgment. *See generally*

13

*Crawford v. Nails on 7th by Jenny Inc.*, No. 18 Civ. 9849 (ER), 2020 WL 564059, at *4 (S.D.N.Y. Feb. 5, 2020) (distinguishing costs that "would exist in almost every case involving a motion to vacate a default judgment").

Most importantly, the prejudice that Vazquez would suffer must be considered alongside the willfulness of Defendants' default and the merits of their purported defense. *Green*, 420 F.3d at 108.  Where, as here, it is clear that Defendants' default was indeed willful and there is *no* evidence supporting the conclusory statements that they assert as their defense, the prejudice that Vazquez would suffer is substantial and unnecessary. *See State Street Bank and Trust Co.*, 374 F.3d at 174 ("We need not evaluate whether the vacatur of the default judgment would subject State Street Bank to prejudice because we have concluded that the defendants failed to establish a meritorious defense . . . .").

## IV.    CONCLUSION

For the foregoing reasons, the motion to vacate default judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Docs. 95, 106.

It is SO ORDERED.

Dated:    December 15, 2022
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.